UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRIAN LEWIS                                                    CIVIL ACTION

VERSUS                                                         NO. 13-744-JJB-RLB

BATON ROUGE POLICE
DEPARTMENT AND
JP MORGAN CHASE BANK

---

## RULING

Before the Court is Plaintiff's Complaint (R. Doc. 1), Motions for Leave to Amend the Complaint (R. Docs. 7, 19, 27, 28, 37) and Motions to Expedite the Court's rulings (R. Docs. 3, 7, 19, 27, 28, 37). Defendant, J.P. Morgan Chase Bank (Chase), has also filed a Motion to Dismiss Plaintiff's Claims Against Chase and to Enjoin Plaintiff from Further Filings (R. Doc. 32). Plaintiff, Brian Lewis (Plaintiff), is proceeding pro se and has been granted in forma pauperis (IFP) status.

### I.  BACKGROUND

#### A.  Previous Cause of Action

Before filing the instant action, Plaintiff filed an almost identical suit against Defendant, J.P. Morgan Chase Bank, for defamation and customer-based harassment. *See Lewis v. J.P. Morgan Chase Bank, N.A.*, No. 12-747 (M.D. La. removed Nov. 27, 2012). In that action, Plaintiff alleged that female employees of Chase wrongfully accused him of sexual harassment and that Chase closed his bank account and would not allow him to bank with Chase in the

future. Complaint, ECF No. 1-1. On several occasions, Plaintiff sought,[1] but was denied leave to amend his complaint to include many of the same claims against BRPD and Albertsons that are now raised in his instant Complaint and pending Motion to Amend. (R. Docs. 1-1, 28).[2]

Plaintiff's prior lawsuit against Chase was eventually dismissed on October 31, 2013, because Plaintiff's complaint consisted of "nothing more than conclusory allegations and legal conclusions devoid of any facts as to Plaintiff's discrimination and defamation claims." Order at 3, ECF No. 102. After the entry of final Judgment, ECF No. 103, Plaintiff immediately appealed the dismissal to the United States Fifth Circuit Court of Appeals. *Lewis*, No. 12-747 (M.D. La. Nov. 27, 2012), *appeal docketed*, No. 13-1150 (5th Cir. Nov. 5, 2013).

### B.   Current Cause of Action

On November 18, 2013, just 13 days after filing his appeal, Plaintiff filed the current action against Defendants, the Baton Rouge Police Department (BRPD) and J.P. Morgan Chase Bank (Chase). Plaintiff is suing BRPD for defamation and civil rights violations occurring after BRPD came to his workplace, Albertsons, accused Plaintiff of stealing and then falsely arrested him. (R. Doc. 1 at 1). In the same lawsuit, Plaintiff further claims Chase is liable for defamation and customer-based discrimination because Chase permanently closed his financial account after employees of the Chase branch located inside of the Albertsons where Plaintiff works wrongfully accused him of sexual harassment. (R. Doc. 1-1).

---

[1] Motions for Leave to Amend, *Lewis*, No. 12-747 (M.D. La.) ECF Nos. 33, 53, 55, 56, 59, 85, 87.

[2] Specifically, Plaintiff was denied leave to add claims of defamation and employment discrimination against his employer, Albertsons Store LLC, and several of its employees because his amended complaints failed to state any plausible claims against the potential defendants. Ruling, ECF No. 92. Plaintiff also sought leave to sue the Baton Rouge Police Department for: "[I]llegal search on me, false accused me of theft, embarrassment in front of other people searching me on job, racism, defamation . . . [and] false arrest." Ruling, ECF No. 94. The Court again denied leave to amend as futile under Rules 15(a)(2) and 20 because the "wholly unrelated" allegations in the amended complaint did not "arise out of the same transaction or occurrence" as the claims pending before the Court. Ruling at 2, ECF No. 94.

On November 25, 2013, Plaintiff moved for leave to amend his Complaint to add Chase branch manager, Kyle Guilbault, as a Defendant and to have "the same claims in my original petition to be put against JP Morgan Chase Bank in amended petition for matter." (R. Doc. 7 at 1, 3, 5). Aside from the caption, Plaintiff's first Amended Complaint does not mention Kyle Guilbault or assert any new causes of action against Guilbault. Plaintiff also moved to expedite the Court's consideration of his first Amended Complaint within 4 days — by November 29, 2013.

On March 7, 2014, Plaintiff again sought leave to add the Department of Labor (DOL) and the Louisiana Workforce Commission (LWC) as Defendants because they failed to conduct criminal investigations into the accusations of sexual harassment made by Chase employees. (R. Doc. 19). As relief, Plaintiff asks for monetary damages and that "all JP Morgan Chase banks be closed down in the State of Louisiana a.s.a.p." and that criminal charges be brought against Chase, the DOL and LWC. (R. Doc. 19-1 at 1-4). Plaintiff moved to expedite the Court's ruling on his second Amended Complaint by March 7, 2014 — the day of filing.

Plaintiff moved to amend for a third time on March 17, 2014 to include discrimination claims against new Defendants, Judge James J. Brady, Judge Shelly D. Dick, Chief Judge Brian A. Jackson, Magistrate Judge Richard L. Bourgeois, Jr., and the Clerk of Court, including its staff, for Middle District of Louisiana. (R. Doc. 27). Each potential Defendant is sued in his or her official capacity for monetary relief. (R. Doc. 27). Consistently, Plaintiff moved to expedite the Court's ruling by the following day of March 18, 2014.

On March 17, 2014, Plaintiff filed his fourth Motion for Leave to Amend his Complaint to include a cause of action against his employer, Albertsons Store, LLC, for discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2. (R. Doc. 28).

3

Plaintiff filed his final Motion for Leave to amend his Complaint on March 28, 2014 (R. Doc. 37) to add claims of discrimination under Title VII and defamation under state law against 9 of his Albertsons co-workers.

## II.  APPLICABLE LAW

District courts must construe the IFP complaints of pro se plaintiffs liberally. Nonetheless, even the most liberally construed IFP complaint can be dismissed at any time, regardless of service or the filing of an answer, if the Court determines the case:

(i)     is frivolous or malicious;

(ii)    fails to state a claim; or

(iii)   seeks monetary relief against an immune defendant.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact" — ones that are fanciful, fantastic, and delusional. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir.1994). A complaint is malicious if it asserts claims already raised by the plaintiff in a previous lawsuit against the same or different defendants. *See Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir.1993) ("malicious" dismissal insures IFP plaintiffs get "one bite at the litigation apple – but not more.").

To determine whether the complaint fails to state a claim, courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which allows for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003) (dismissal of IFP complaint for failure to state a claim employs Rule 12(b)(6) standard). Rule 12(b)(6) requires a court to "accept all well-pleaded facts as true" in a "light most favorable to the plaintiff." *Baker*

*v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In that posture, dismissal only becomes appropriate "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments — ones that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985). In other words, "the same standard of legal sufficiency as applies under Rule 12(b)(6)," and by extension § 1915(a)(2)(B)(ii), applies to futility. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3D 863, 873 (5th Cir. 2000).

### III. DISCUSSION

The facts relevant to Plaintiff's claims against each named and potential Defendant are unsystematically strewn throughout the record. Much of the relevant information is found in various letters and "packets of documents" filed by Plaintiff, as opposed to his actual pleadings. Generally, the Court would not go beyond the pleadings when considering dismissal. However, Plaintiff's pro se complaint must be liberally construed. In addition, the Court will mostly employ the same legal standard whether considering dismissal of the IFP Complaint under § 1915 and Rule 12(b)(6) or the futility of the proposed Amended Complaints under Rule 15(a). So, instead of separately considering the veracity of the Complaint and each proposed Amended Complaint, the Court will consider the claims against each Defendant and potential Defendant,

giving liberal construction to all of the factual allegations made throughout the various documents filed in the record.

### A.     Baton Rouge Police Department

Plaintiff alleges that BRPD discriminated against him because of his race (African American) and sex (Male) in violation of his civil rights secured by Title VII. (Compl., R. Doc. 1-1 at 18); (EEOC Intake, R. Doc. 11-1 at 2, 4); (EEOC Charge, R. Doc. 14 at 4). Specifically, Plaintiff claims that BRPD falsely arrested him after conspiring with a "lady customer" to accuse him of stealing a cell phone while working at Albertsons on October 17, 2013 and that BRPD has continuously refused to give him the police report relevant to the incident. (R. Doc. 11-1 at 2). Plaintiff does not state or otherwise suggest that he wishes to pursue his civil rights claim under any law other than Title VII.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a). By its very terms, Title VII applies only in the employment context. *See Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984) ("Once a contractual relationship of employment is established, the provisions of Title VII attach and govern certain aspects of that relationship."). Therefore, in order to state a cause of action, the legal relationship between Plaintiff and BRPD must be one of employer-employee.[3] Assuming BRPD generally qualifies as an "employer" under the statute, the deciding question is whether Plaintiff is "an individual employed" by BRPD — i.e., whether an employment relationship exists to trigger the provisions of Title VII.

---

[3] Title VII defines "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The statute defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Plaintiff does not suggest, argue or represent that BRPD is his employer. Likewise, nothing before the Court indicates that an employment relationship exists between Plaintiff and BRPD. The EEOC reached the same conclusion after its investigation and explained it was closing "its file on this charge" because "[n]o employer-employee relationship" existed between Plaintiff and BRPD. (Pl.'s Notice of Right to Sue, R. Doc. 33-1 at 6). Because Plaintiff has no employment relationship with BRPD, his claim against them is frivolous as it fails to state a cause of action under Title VII.

Even if, purely for the sake of argument, Plaintiff wished to pursue his civil rights claim as a constitutional violation made actionable by 42 U.S.C. § 1983, the Court would reach the same conclusion. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

As a municipality, BRPD qualifies as a "person" under § 1983 and may be sued directly. However, it cannot be named as a defendant under a theory of vicariously liability for the conduct of its officers. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Instead, BRPD can only be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives an individual of his or her constitutional rights. *Id.* at 694. The unconstitutional conduct must be "directly attributable to the municipality through some sort of official action" or policy identified by the plaintiff; "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009).

Plaintiff has not alleged any facts that one or more of BRPD's employees violated his civil rights as a result of an official BRPD policy or custom. Plaintiff has likewise failed to plead

any specific facts supporting a cognizable constitutional violation. *See Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (section 1983 complaint must plead specific facts and allege a cognizable constitutional violation to avoid dismissal for failure to state a claim). Instead, Plaintiff summarily claims he was accused of stealing a female customer's cell phone, illegally searched and then falsely arrested. He also alleges BRPD refuses to provide him a copy of the police report. Nonetheless, the allegations are actually contradicted by the record.

Plaintiff has provided a police report from an October 17, 2013 incident occurring at Albertsons. (R. Doc. 11-1 at 16-19). That police report does not mention Brian Lewis, a female customer or a stolen cell phone. Instead, the report explains that "two b/m's" (black/males) were detained for suspected shoplifting by an Albertsons "Loss Prevention Officer," but released before a BRPD officer even arrived. (R. Doc. 11-1 at 19). The police report confirms that the responding officer had no contact with either suspected shoplifter and that no search or arrest occurred. (R. Doc. 11-1 at 16-19). Because Plaintiff provides no factual basis for any of his allegations, Plaintiff does not have a viable civil rights claim under either Title VII or § 1983.

Plaintiff's final cause of action against BRPD is for defamation. Defamation is a tort cognizable under Louisiana state law involving unwarranted damage to a person's reputation. Four elements are necessary to state a cause of action: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 10/21/97). These elements necessarily require a plaintiff to prove that the defendant acted with actual "malice or other fault" in publishing "a false statement with defamatory words which caused plaintiff damages." *Sassone v. Elder*, 626 So.2d 345, 350 (La. 10/18/93).

Plaintiff's Complaint and Amended Complaints do not allege any conduct of BRPD which corresponds to any of these four elements. The only information provided is that BRPD "false accuses me of theft . . . false accusations on my name." (R. Doc. 1-1 at 18). Under even the most liberal standard, these statements are insufficient to allege that any false or defamatory statements were made by BRPD, much less communicated to a third party with malice or other fault. And so, Plaintiff's claims against BRPD must be dismissed for failure to state a claim upon which relief can be granted.

### B. Albertsons

Plaintiff likewise accuses Albertsons, his employer, of discrimination under Title VII. (R. Doc. 28). Because Plaintiff actually maintains an employment relationship with Albertsons, the question before the Court is whether Plaintiff has stated a cognizable claim of discrimination under Title VII.

Title VII makes it unlawful for an employer to base employment decisions on an individual's race, color, national origin, religion or sex. 42 U.S.C. § 2000e-2(a)(1)-(2).[4] To establish a prima facie violation of Title VII, a plaintiff must show that he or she (1) belongs to a protected class, (2) was qualified for the position, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) (establishing burden shifting proof structure under Title VII); *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358 (1977) ("any Title VII plaintiff

---

[4] Specifically, Title VII makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1)-(2).

must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion").

Plaintiff's factual allegations relevant to Albertsons in no way indicate that Plaintiff suffered an adverse employment action or that Albertsons engaged in conduct giving rise to an inference of discrimination. According to his Amended Complaint, Plaintiff alleges that Albertsons violated Title VII by denying his request for "any paperwork" presumably related to an investigation "regarding J.P. Morgan Chase bank workers of who told lies on Brian Lewis name for matter." (R. Doc. 28-1 at 1). Plaintiff also claims he "was arrested due to theft" and that Albertsons' human resource manager will not give him the police report relevant to the incident. (R. Doc. 28-1 at 1); (Pl.'s Letter to EEOC, R. Doc. 11-1 at 1); (Pl.'s EEOC Charge, R. Doc. 12-1 at 5).

To begin, it is unclear whether any investigation was ever conducted by either Albertsons, Chase or both. If Albertsons investigated the alleged harassment, the Court first notes that an employer's investigation of alleged sexual harassment, without more, does not constitute an adverse employment action under Title VII. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 625 (6th Cir. 2013) ("[t]he act of investigating possible employee misconduct is not an adverse [employment] action") (alterations in original); *McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) ("The employer who fails to investigate a charge of sexual misconduct will be liable under Title VII, should the charge turn out to be meritorious, for having failed to exercise due care to prevent sexual harassment."). If Chase conducted an investigation, Albertsons would not be at liberty to obtain any resulting paperwork at the request of its employee. Additionally, Plaintiff does not suggest that Albertsons' refusal to provide the requested information adversely

affected the terms and conditions of his employment with Albertsons. In other words, Plaintiff has not alleged an adverse employment action.

Likewise, Plaintiff does not offer any facts showing Albertsons conducted some investigation with discriminatory animus or has refused to give him with the requested information for discriminatory reasons. *See Bissett v. Beau Rivage Resorts Inc.*, 442 F. App'x 148, 153 n.4 (5th Cir. 2011) (employer's investigation of employee misconduct did not violate Title VII where there was no evidence that employer "acted with racial animus or handled the investigation differently because [employee] is Caucasian").

Finally, Plaintiff's claim that Albertsons will not give him a copy of the police report from his alleged arrest is contradicted by the record. First, the police, not Albertsons, would be in possession of any police report. Second, as the Court explained earlier, Plaintiff does have a copy of the police report, which he filed in the record. (R. Doc. 11-1 at 16-19). Finally, that police report does not mention Brian Lewis, the "lady customer" or the stolen cell phone described in his Complaint and Amended Complaints. It also verifies that no arrest occurred. Given Plaintiff's failure to allege any adverse employment action or facts suggesting discriminatory animus, the Court finds Plaintiff has not stated a cause of action under Title VII.

### C.    Individual Albertsons Employees

Plaintiff also asks to amend his Complaint to sue 9 Albertsons co-workers for race discrimination and sexual harassment under Title VII and for defamation (R. Doc. 37). Again, Plaintiff's fifth Amended Complaint fails to state a claim against the potential Defendants.

To begin, Plaintiff did not exhaust administrative remedies before filing his Amended Complaint, as required by Title VII. Before filing suit under Title VII, a plaintiff must satisfy two preconditions "(i) by filing [a] timely [charge] of employment discrimination with the

[EEOC] and (ii) by receiving and acting upon the [EEOC's] statutory notice of the right to sue." *McDonnell Douglas v. Green Corp.*, 411 U.S. 792, 798 (1973) (citing 42 U.S.C. §§ 2000e-5(a),(e) (1964) (current version at 42 U.S.C. §§ 2000e-5(e)(1), (f)(1))). Once a plaintiff receives notice of the right to sue, he or she has 90 days to file suit in either state or federal court. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (clarifying that the 90 period runs from the date of receipt).

Plaintiff's Amended Complaint does not suggest that he filed an EEOC charge relevant to these incidents or received a notice of his right to sue.[5] Regardless, it is unlikely Plaintiff could have exhausted administrative remedies considering the alleged events occurred within 4 days of Plaintiff's Amended Complaint. (R. Doc. 37-1 at 2-3) (events occurred between March 18 and March 24). As such, Plaintiff's Amended Complaint is futile.

Even if Plaintiff has exhausted administrative remedies, he still cannot state a claim against the 9 Albertsons employees named in the Amended Complaint. It is well settled that there is no individual liability for employees under Title VII. *See, e.g., Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994) ("individuals who do not otherwise qualify as an employer cannot be held liable for a breach of Title VII."); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (Fifth Circuit "does not interpret the statute as imposing individual liability for such a claim"); *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002) (recognizing the term employer does include "any agent" of an employer, but explaining "Congress's purpose was merely to import *respondeat superior* liability into Title VII."). As

---

[5] Likewise, these new allegations could not have become part of his earlier charge against Albertsons, which the EEOC dismissed on December 16, 2013. (R. Doc. 11-1 at 11). *See Crawford v. Harris Cnty. Juvenile Prob. Dep't*, 31 Fed. App'x 159, *3 (5th Cir. 2001) (A federal complaint is limited to "'discrimination like or related to allegations contained in the [EEOC] charge' and the scope of the resulting EEOC investigation that would 'reasonably be expected to grow out of the charge.'")

individual employees of Albertsons, the 9 co-workers named by Plaintiff are not subject to liability.

Finally, Plaintiff's defamation claims are also futile. Like the defamation claims in his other Amended Complaints, Plaintiff has not alleged that any of the employees communicated false statements to third parties or that any conduct was done with malice or actual intent. And so, Plaintiff's fifth Amended Complaint fails to state a claim upon which relief can be granted.

### D. Department of Labor and Louisiana Workforce Commission

Plaintiff's second Amended Complaint includes unidentified claims against the DOL and LWC for "fail[ing] to do a criminal investigation concerning" the sexual harassment allegations made by Chase employees. As relief, Plaintiff asks for criminal charges to be brought against the DOL and LWC. Considering that neither of these agencies has the prosecutorial authority to conduct criminal investigations and that Plaintiff "does not have a constitutional right to commence criminal proceedings on [his] own," Plaintiff's claims against the DOL and LWC are clearly fanciful, delusional and fail as a matter of law. *Annamarie v. Electors for the State of La.*, No. 12-601, 2012 WL 5878153, at *2 (M.D. La. Oct. 15, 2012).

### E. U.S. District Court Judges and the Clerk of Court

Judges enjoy absolute immunity for conduct performed in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 363 (1978). This immunity has only been abrogated in two instances — (1) when the alleged conduct was not judicial in nature or (2) when the conduct was judicial in nature, but taken in the complete absence of jurisdiction. *Id.* at 356-57.

Plaintiff wishes to sue the entire district bench for the Middle District of Louisiana. This includes both the presiding district judge, Judge James Brady, and the assigned magistrate, Judge

Richard Bourgeois.[6] As relief, Plaintiff requests "3 million to 5 million dollars a piece" from the named judges for discrimination and "showing racism" during this and his earlier litigations. (R. Doc. 27-1 at 2-3).

Concerning his earlier case, Plaintiff complains that Magistrate Judge Bourgeois "denied all my amended petitions" and, along with Judge Dick, did not allow "discovery of women names." (R. Doc. 27-1 at 1). Plaintiff also suggests that Judge Jackson "allowed" Judge Brady "to not approve JP Morgan Chase bank into court the first time concerning jurisdiction on matter." (R. Doc. 27-1 at 1).[7] As for the current litigation, Plaintiff takes offense with Judge Brady for denying as frivolous (R. Doc. 9) Plaintiff's Motion for Contempt and its attached subpoenas. (R. Doc. 8).[8] Plaintiff also complains that Judge Brady and Judge Bourgeois refused to "sign" his IFP Motion, which has since been granted. (R. Doc. 27-1 at 2).[9]

None of these allegations indicate that any of the named judges exhibited discriminatory animus. Instead, they are clearly based on Plaintiff's disagreement and frustration with the judges' adversarial rulings. *See Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993) ("Adverse rulings against the defendant in the same or a prior judicial proceeding do not render the judge

---

[6] Even though Plaintiff has not moved for recusal, the Court notes that "a judge is not disqualified merely because a litigant sues or threatens suit." *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993). And naming a judge in a meritless action like Plaintiff's does not warrant recusal. *Id.*

[7] Plaintiff complains of various rulings made in his earlier suit despite having already appealed its dismissal to the Fifth Circuit. *See Lewis v. JP Morgan Chase Bank, N.A.*, No. 13-31150 (5th Cir. October 31, 2013) (appealing dismissal and various other adversarial rulings); *In re Lewis*, No. 13-31205 (5th Cir. Jan. 10, 2014) (denying mandamus petition challenging several district court rulings, despite having already filed a notice of appeal).

[8] In that Motion, Plaintiff asked the Court to "make" BRPD and Chase settle with him for "any where [sic] from 1 million to 5 million for breaking court rules." (R. Doc. 8-1 at 1). Plaintiff also attached three subpoenas addressed to either Chase or BRPD to his Motion without explanation. (R. Doc. 8-1 at 3-5).

[9] Plaintiff also filed a writ of mandamus in the Fifth Circuit complaining "that the district court has delayed in ruling on his [current] civil suit" — an allegation now raised in his Amended Complaint. *In re Lewis* at 2, No. 13-31293 (5th Cir. Feb. 19, 2014). That writ was denied, however, because "there has been no undue delay" given "Lewis filed his suit just over two months ago." *Id.* at 3.

biased."). Because each judge enjoys absolute immune for his or her judicial conduct, Plaintiff's Amended Complaint is meritless.

Not only judges, but clerks of court and their staff "have absolute immunity from actions for damages arising from acts they are specifically required to do under court orders or at a judge's direction, and only qualified immunity for all other actions." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981). Plaintiff has likewise not stated a viable claim against the Clerk of Court or its staff because the alleged conduct relates to Plaintiff's various filings in this lawsuit — actions for which they enjoy immunity. (R. Doc. 27-1 at 2).

### F.    J.P. Morgan Chase Bank

Plaintiff begins his Complaint by explaining "The reason why JP Morgan Chase Bank is into Court for 2nd time on matter." (R. Doc. 1-1 at 3). Indeed, the current allegations against Chase are identical to those already adjudicated and dismissed on the merits in his earlier litigation. The current lawsuit is nothing more than Plaintiff's continued dismay over matters that have already been dismissed by this Court. For example, Plaintiff asks "Why JP Morgan Chase bank workers are *still* refusing to open up a checking or savings account for me Brian Lewis in matter?" (R. Doc. 1-1 at 5) (emphasis added).

Repeat litigations raising the same causes of action as an earlier suit are subject to dismissal as malicious under § 1915. *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) ("In forma pauperis plaintiffs have no preferred status as litigants in respect to the procedures with which they must comply" and a suit that duplicates claims in an earlier action by the same plaintiff is properly dismissed as "malicious."). Because the claims in this action duplicate those raised and dismissed in Plaintiff's earlier lawsuit, the current Complaint against Chase is dismissed as malicious.

G.  **Relatedness**

Beyond its substantive futility, the Court finds Plaintiff's lawsuit is also procedurally frivolous because it contains wholly unrelated claims against multiple parties. Rule 20 of the Federal Rules of Civil Procedure generally allows a plaintiff to join two or more defendants when a right to relief is asserted that arises "out of the same transactions or occurrence" and contains common "questions of law or fact." Fed. R. Civ. P. 20. Plaintiff does not explain how his claims against Chase, BRPD, Albertsons, the DOL, LWC and the judges and court personnel of the Middle District of Louisiana are related to one another. Nothing in the record suggests the claims against the various named and potential Defendants "arise out of the same transaction or occurrence" or contain common "questions of law or fact." Fed. R. Civ. P. 20.

H.  **Motions to Expedite**

Because the time periods specified in Plaintiff's first five Motions to Expedite (R. Docs. 3, 7, 19, 27, 28) have passed, Plaintiff's first five Motions to Expedite are all denied as moot. Plaintiff's sixth Motion to Expedite requested that the Court rule on Plaintiff's fifth Motion for Leave to file an Amended Complaint (R. Doc. 37) by April 12, 2014. Since April 12, 2014 has not passed, Plaintiff's sixth Motion to Expedite (R. Doc. 37) is granted.

I.  **Chase's Motion to Enjoin Further Litigation**

In its Motion to Dismiss (R. Doc. 32), Chase urges that the Court "should exercise its *sua sponte* injunctive powers under 28 U.S.C. § 1651 and enjoin Mr. Lewis from filing any future litigation on any cause of action arising from the fact situation at issue in this case." (R. Doc. 32-1 at 14). The Court agrees.

"The district court has the power under 28 U.S.C. § 1651(a) to enjoin litigants who are abusing the court system by harassing opponents." *Harrelson v. United States*, 613 F.2d 114, 116

16

(5th Cir. 1980) (enjoining litigant who continued to abuse court system by harassing opponent from filing any future state or federal actions arising from the same fact set); *see also Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1499 (5th Cir. 1993) ("The Villars seem determined to pursue this abusive litigation in federal courts until ordered to stop. Under these circumstances, it was appropriate for the district court to enjoin the Villars from bringing any future litigation based on the underlying facts in this case . . . ."), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998); *Exxon Corp. v. Lee*, No. 96-1973, 1996 WL 551484, at *1 (E.D. La. Sept. 25, 1996) (where opponent continued filing the same suit despite 3 prior dismissals, Exxon was "entitled to Judgment enjoining [opponents] from repetitive and harassing litigation against Exxon under 28 U.S.C. § 1615(a)" to prevent their "continual relitigation of the same claims").

This is the third time Plaintiff has filed suit against Chase based on the same set of facts. *See Lewis v. J.P. Morgan Chase Bank N.A.*, No. 12-487 (M.D. La. filed Aug. 10, 2012) (dismissed as frivolous), *appeal docketed*, No. 12-31174 (5th Cir. Jan. 30, 2013); *Lewis v. J.P. Morgan Chase Bank N.A.*, No. 12-747 (M.D. La. removed Nov. 27, 2012) (dismissed as frivolous), *appeal docketed*, No. 13-1150 (5th Cir. Nov. 5, 2013). Plaintiff's first two suits were dismissed on the merits as frivolous; he them immediately appealed their dismissals to the Fifth Circuit. Despite this, Plaintiff filed the instant suit against Chase to assert the same cause of action arising under the same facts. He has repeatedly abused the court system and harassed Chase by continuing to pursue his claims in either district or appellate court. As such, Plaintiff is enjoined from filing any future litigation against Chase in this Court based on the same set of facts giving rise to this and his two earlier suits.

## IV. CONCLUSION

Based upon the foregoing discussion, the Motions to Expedite (Docs. 3, 7, 19, 27 and 28) are DENIED as moot; the Motion to Expedite (Doc. 37) is GRANTED; the claims asserted against the BRPD are hereby DISMISSED under 28 U.S.C. § 1915(e)(2)(B) as frivolous, malicious and failing to state a claim; the Motion by Chase to Dismiss and Enjoin Further Litigation (Doc. 32) is GRANTED and the claims against Chase are DISMISSED as frivolous, malicious and failing to state a claim; Plaintiff's Motions to Amend (Docs. 7, 19, 27, 28, 37) are all DENIED on the basis of frivolousness and futility.

Signed in Baton Rouge, Louisiana, on April 3rd, 2014.

_____
JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA